**Jerry BORN, Plaintiff–Appellant,**

**v.**

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

**No. 90–5034.**

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 17, 1990.

Decided Oct. 22, 1990.

Roger S. Stanfield, West Tennessee Legal Services, Huntingdon, Tenn., for plaintiff-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Tony R. Arvin, Harriett Miller Halmon, Asst. U.S. Attys., Office of the U.S. Atty., Memphis, Tenn., Bruce Granger, Mack A. Davis, Mary Ann Sloan, Holly A. Grimes, Susan Kelm Story, Dept. of Health and Human Services, Office of General Counsel, Atlanta, Ga., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Claimant-appellant, Jerry Born, appeals from the district court order affirming the Secretary of Health and Human Services' determination that claimant was not disabled and, therefore, not entitled to disability insurance benefits. For the following reasons, we affirm.

## I.

Claimant, Jerry Born, filed an application for disability insurance benefits on January 21, 1986, alleging a disability onset date of September 2, 1985, because of status post lower lumbar surgery, degenerative disc disease, and chronic left leg and back pain. His application was denied initially and upon reconsideration. On December 14, 1987, a hearing was held before an Administrative Law Judge (ALJ). On May 25, 1988, the ALJ issued a decision that claimant was not disabled. The appeals council denied review and this decision became the final decision of the Secretary.

Claimant commenced an action for judicial review in the United States District Court for the Western District of Tennessee. The case was referred to a United States magistrate, who determined that the Secretary's decision was supported by substantial evidence and recommended that the Secretary's decision be affirmed. On November 2, 1989, the district court adopted the report and recommendation of the magistrate, affirming the Secretary's denial of disability benefits. Claimant timely filed this appeal.

## II.

Claimant was born on September 1, 1952. He has an eighth grade education. From 1970 through 1985, claimant worked as a foreman for a water tank company owned by his father. His job responsibilities included supervising a work crew, operating heavy equipment and welding machines, welding, doing job estimates and painting. In September 1976, claimant injured his back at work and underwent a series of operations including an exploratory laminectomy and excision of a ruptured disc at L5 in 1977 and a posterior lateral spinal fusion in 1978. In early 1986, claimant alleged that he began to have serious physical difficulties. On July 14, 1986, claimant was examined by Dr. Joseph P. Rowland. On a medical assessment form, Dr. Rowland reported claimant's complaints of low back and left leg pain. Dr. Rowland found that claimant had no motor reflex or sensory loss except for a vague decrease to pinprick in the left leg in its entirety in a nonspecific pattern. It was his impression that claimant had pain secondary to the two previous back operations, but he found no specific neurological findings. Dr. Rowland stated that he had seen claimant only once, but he believed that claimant could be gainfully employed for an eight-hour shift if he did no lifting of more than 25 to 30 pounds and no repetitive bending. He referred claimant to Dr. Joe Hudson who performed an epidural block.

After applying for social security benefits, claimant was asked by the examiner if he had any objection to seeing Dr. Rowland or Dr. Hudson for a consultative examination. Claimant replied that he preferred not to see one of them, but he did not remember which one, and wanted instead to have a consultative examination performed by a government-paid surgeon. Claimant was willing to see Dr. Bridges or Dr. Lay, two of his earlier treating physicians, but both were unwilling to perform a social security examination.

On May 5, 1987, Dr. C. Douglas Wilburn, an orthopedic surgeon employed by the government, evaluated claimant. Dr. Wilburn found that claimant had slight atrophy of the left calf and some very mild slightly decreased sensation of the left foot and lower leg. There were very mild degenerative changes about the lower lumbar spine, but these were minimal. The overall adjustment of the back looked good. Dr. Wilburn thought that claimant suffered from chronic left leg and back pain associated with mild S–1 nerve root disfunction as shown by calf atrophy, sensory change, and reflex change. No real evidence of any persistent radicular pain was present. Dr. Wilburn felt the pain to be a combination of mechanical back pain associated with residual changes from the ruptured disc and subsequent surgery. Dr. Wilburn felt that it was possible for claimant to perform light-duty work on a part-time basis with a 25 to 30 pound lifting restriction and with no repetitive lifting, bending, or stooping, a restriction best served by a job allowing him to alternately sit and walk.

At the hearing before the ALJ, claimant testified that he was aware of his right to be represented by an attorney but chose to proceed without one. Claimant testified that he could stand and walk for roughly 30 minutes before he started getting sick from the pain. He alleged that by June of 1985 he was unable to alternate sitting and standing at work. Claimant testified that he spends some of each day in bed, and that he walks during the day, "maybe a quarter-of-a-mile to a half-of-a-mile." Claimant stated that he had given up deer hunting and other hobbies because of his back problems. Claimant agreed he could lift 20 to 30 pounds. Claimant testified that the longest he could stand was roughly five minutes. Claimant also reported that he had driven approximately 4000 miles during 1987, that he could sometimes ride up to 100 miles without difficulty, and that his pain medication did not cause any side effects.

A vocational expert, Dr. Lorne Semrau, also testified at the hearing. The administrative law judge asked the vocational expert to consider a person of the same age, educational and vocational background as claimant, who could perform sedentary work, and due to two prior lumbar back operations and low back and left leg pain was further prevented from lifting more than 25 to 30 pounds and from performing repetitive lifting, bending, or stooping, and prolonged sitting. The ALJ also asked the vocational expert to assume that claimant must be allowed to alternate from a sitting, standing, and walking position and could not work more than six hours out of an eight-hour work day. The vocational expert responded that there were sedentary unskilled jobs which claimant could perform, including assembly positions within the electrical parts industry and metal parts industry. Specifically, the vocational expert testified that in the national economy there were 800,000 full-time assembly jobs that allowed a sit/stand option. Statewide there were 75,000 positions in the electrical parts industry and 50,000 in the metal parts industry. Within the local region, in the electrical parts industry, there were 1,500 positions allowing this option and within the metal parts industry, 1,000 such jobs. The vocational expert then stated:

> The difficulty though, Your Honor, is that I'm not exactly sure how that relates us [sic] far as part-time work. That will be your decision, not mine. But those positions that I mentioned would be considered positions which normally would be—would be full—full-time and it would be the employer's discretion as to whether they would be hired on a part-time basis.
>
> Q. Uh-huh, well are there part-time jobs existing in these types of—
>
> A. Yeah, exactly those same work positions.
>
> Q. Same jobs, alright. And would they—
>
> A. But the numbers would be the same.

On appeal, claimant contends that the Secretary failed to develop the record fairly and that the Secretary's decision that there are a significant number of jobs in the national economy which claimant can perform lacks substantial evidence.

### III.

■ Claimant contends that the Secretary failed in his duty to fully and fairly develop the record, relying on *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048 (6th Cir.1983), in which this court stated that "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Id.* at 1051. Claimant argues that the ALJ only cursorily examined him about his alleged disability. Claimant argues that, as in *Lashley*, his ability to ask questions and develop his own record was seriously circumscribed by his own intellectual and educational limitations, and the ALJ's scant questions concerning his subjective complaints of disabling pain were inadequate.

We find that the present case is distinguishable from *Lashley* where the court found that the ALJ's duty to develop a full and fair record with a pro se claimant had not been met. In *Lashley*, the claimant had suffered a stroke and every treating physician had determined that he was permanently disabled because of the effects of the stroke. *Id.* at 1050–51. The evidence of the treating physicians was in conflict with the conclusions of the consultative examiners hired by the social security administration. At the hearing, Lashley was questioned only superficially about his ability to perform work and was not questioned at all about why he had been fired after only three days at his last place of employment. *Id.* at 1052–53. In the present case, although the ALJ did not question claimant extensively about his subjective complaints of disabling pain, there was no discrepancy in the record concerning the objective evidence of his alleged disability which the ALJ had to resolve as the ALJ in *Lashley* did. Moreover, the claimant in the present case gave

no evidence of impaired mental ability as the claimant in *Lashley* did. *Id.* at 1052.

In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986), this court stated that the mere fact that a claimant is unrepresented is not grounds for reversal. As in *Duncan*, we do not believe that the brevity of the hearing in the present case resulted in unfair or unsupported conclusions. Even if the ALJ had questioned claimant in greater detail concerning his ability to sit or stand, claimant's subjective complaints of pain must be supported by objective evidence.[1] *Id.* at 853. Claimant did not wish to have a consultative examination conducted by his current treating physicians, two of his former physicians refused to perform a medical assessment for the social security administration, and the ALJ thus relied on the objective evidence presented by the social security administration's consultative examiner, Dr. Wilburn. The ALJ accepted Dr. Wilburn's determination that claimant was limited to part-time work even though his treating physician, Dr. Rowland, whom claimant did not wish to perform the consultative exam, had stated that claimant could be employed for an eight-hour shift. Moreover, claimant has failed to suggest what other information could have been brought forth by further questioning of him which would have enhanced a determination of disability. *Id.* at 856.

For these reasons, we agree with the district court that the Secretary did not fail in his duty to fully and fairly develop the record.

### IV.

■ We must next determine whether the Secretary's determination that claimant is not disabled is supported by substantial evidence.

■ This court has jurisdiction on appeal to review the Secretary's final decision

---

1. Claimant's testimony at the hearing was not afforded full credibility by the ALJ, because under the *Duncan* standard, the objective medical evidence did not confirm the severity of the alleged disabling pain arising from claimant's condition and the objectively established medical condition was not of such severity that it could reasonably be expected to produce disabling pain. 801 F.2d at 852. Thus, claimant's contention that the ALJ accepted claimant's testimony and then improperly applied the medical vocational guidelines is without merit.

pursuant to 42 U.S.C. § 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and "'must take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).

■ The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)(1)(A). If the claimant is working, benefits are automatically denied. 20 C.F.R. § 404.1520(b). If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. 20 C.F.R. § 404.1520(c). Since the ALJ found that claimant had not worked since 1985 and that he suffered from severe post lumbar fusion and excision and chronic left leg and back pain, further inquiry was necessary. If a claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. § 404.1520(d). If so, benefits are owing without further inquiry. In the present case, the ALJ found that claimant did not suffer from one of the listed impairments. In such a case, assuming the individual has previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. § 404.1520(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir.1978). In the present case, the ALJ found that claimant was not capable of returning to his particular occupation because he was incapable of lifting more than 30 pounds and incapable of engaging in repetitive lifting, bending, or stooping.

■ At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. *Allen*, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 20 C.F.R. § 404.1520(f)(1); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." 20 C.F.R. § 404.1569. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

In the present case, the ALJ determined that claimant was limited to unskilled sedentary work [2] and that claimant's residual functional capacity for a full range of sedentary work was reduced by pain and postural limitations. Based on an exertional capacity for a full range of sedentary work, and claimant's age (younger individu-

---

**2.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567.

al), 8th grade education, and untransferable work skills, application of the medical vocational guidelines would direct a conclusion of "not disabled." 20 C.F.R. § 404.1569 and Grid Rule 201.25, Pt. 404, Subpt. P, App. 2. However, following the direction of 20 C.F.R. § 404.1520(a), the ALJ considered claimant's additional non-exertional limitations, which allowed him to work only six hours per shift duration and required a sit/stand option and thus precluded him from performing a full range of sedentary work. Because claimant could not perform a full range of sedentary work, his characteristics did not precisely fit the pattern of the medical vocational guidelines and the ALJ was required to make a nonguideline determination. *Kirk,* 667 F.2d at 531. The testimony of a vocational expert was required to satisfy the Secretary's burden of proof regarding the availability of jobs which claimant could exertionally handle. 20 C.F.R. § 404.1566(e); *Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987).

Regulation 404.1566 states:

(a) *General.* We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—

(1) Work exists in the immediate area in which you live;

(2) A specific job vacancy exists for you; or

(3) You would be hired if you applied for work.

(b) *How we determine the existence of work.* Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

Claimant contends that there is not substantial evidence to support the Secretary's determination that there is a significant number of jobs in the national economy that meet claimant's physical and mental abilities and vocational qualifications. Claimant argues that the vocational expert failed to specify the number of part-time jobs which would meet claimant's requirements of working six hours per day with alternate standing and sitting.

This court has addressed the difficult task of enumerating exactly what constitutes a "significant number" of jobs in *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir. 1988). In *Hall,* this court concluded that the claimant was not disabled simply based on a need to alternate between sitting, standing and walking, because the vocational expert could identify 1,350–1,800 unskilled jobs that could be performed within claimant's limitations. However, the court cautioned that it was impossible to set forth one special number as the boundary between a "significant number" and an insignificant number of jobs. *Id.* The decision must be made on a case-by-case basis and ultimately must be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation. *Id.* Criteria to be considered include:

the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Id.*

In the present case, the vocational expert testified that there were 800,000 full-time assembly jobs that allowed a sit/stand option in the national economy, 2,500 such jobs within the local region, and 125,000 positions within the state of Tennessee.

The vocational expert essentially testified that whether a job is part-time or full-time is a matter of the employer's discretion and that part-time jobs did exist in the electrical and metal parts assembly industries. Thus, the vocational expert was unable to provide an exact number of positions that an employer would be willing to fill on a part-time basis. However, we find that with a job base of 800,000 in the national economy, it was reasonable for the Secretary to conclude that a sufficient percentage of those jobs exist on a part-time basis that the part-time jobs would represent a significant number of jobs. *See Barker v. Secretary of Health and Human Servs.,* 882 F.2d 1474, 1478–79 (9th Cir.1989) (1,200 jobs are within the parameters of "significant numbers"); *Sias v. Secretary of Health and Human Servs.,* 861 F.2d 475, 480 (6th Cir.1988) (acceptance of vocational expert's opinion that employers would try to accommodate a worker who had to keep one leg elevated was not improper); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988) (even if claimant's contention that only 500 jobs were available were accepted, this number represents a significant number under *Hall v. Bowen* criteria). Moreover, the ALJ had given claimant the benefit of the doubt that he was limited to part-time work even though his treating physician had determined that he was able to work an eight-hour shift. The types of jobs which the vocational expert identified do not appear to be of an isolated nature as he testified that there were 2,500 full-time assembly positions meeting claimant's requirements within the local region. Because the full-time assembly jobs enumerated by the vocational expert were abundant and easily accessible, under the "common sense" principle articulated in *Hall,* it was reasonable for the Secretary to conclude that there exists a significant number of similar part-time jobs that claimant could perform.

For these reasons, the decision of the Secretary that claimant is not disabled is affirmed.