5 F.3d 547
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ruth W. FITTER, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-7013.
 United States Court of Appeals, Tenth Circuit.
 Aug. 23, 1993.
 
 ORDER AND JUDGMENT[1]
 Before McKAY, Chief Judge, SETH, and BARRETT, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Ruth Ritter appeals the district court's order of December1,1992, adopting the recommendation of the magistrate judge to affirm the decision of the Secretary of Health and Human Services to deny claimant's application for supplemental security income benefits. Claimant contends that the Secretary's determination that she could perform sedentary work with a sit/stand option was not supported by substantial evidence. Specifically, claimant argues that the Secretary failed to analyze her subjective allegations of pain correctly, that she failed to develop the record adequately, and that she based her opinion on the vocational expert's answers to improper hypothetical questions. Based on our careful review of the record, we affirm.
 
 
 3
 Claimant first filed an application for social security benefits on January 28, 1987. This application was denied administratively, and claimant did not seek any further review. Claimant filed the present application for benefits on November 29, 1989, alleging she had been disabled since June 1980 as a result of back and stomach problems. Because claimant did not appeal the denial of her first application for benefits, she is not eligible to receive benefits before November 29, 1989, the date of her second application. On September 13, 1990, claimant received a de novo hearing before an ALJ, at which she was represented by a paralegal. The ALJ denied claimant's application on October 19, 1990, concluding that although claimant could not perform her past relevant work as a cook or waitress, she could perform a number of sedentary jobs in the national economy with a sit/stand option. The ALJ's decision became the final decision of the Secretary on July 12, 1991, when the Appeals Council denied review. Thereafter, claimant sought review of the Secretary's decision by the district court, which affirmed the Secretary's decision on December 1, 1992. This appeal followed.
 
 
 4
 We review the Secretary's decision to determine whether her findings are supported by substantial evidence in the record and whether she applied the correct legal standards. Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion reached by the Secretary." Id. at 697. In determining whether the Secretary's decision is supported by substantial evidence, we may not weigh the evidence anew or substitute our discretion for that of the Secretary. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir.1986).
 
 
 5
 The evidence showed that claimant injured her back in June 1980 while employed as a cook at Kentucky Fried Chicken. She had a semihemilaminectomy with a diskectomy of the L4-L5 in October1980, and was followed by Dr. Albrand, the operating neurosurgeon, through the spring of 1981. Dr. Albrand noted that claimant was doing well, and released her to return to work on April 1, 1981.
 
 
 6
 In December 1981, claimant developed back pain after picking pecans. Dr. Albrand admitted claimant to the hospital in January 1982 for a semilaminectomy of the L4-L5 with a diskectomy and fusion of the L4-L5. In February, Dr. Albrand reported that claimant's fusion was healing properly and claimant seemed to be progressing well overall. He also said she could drive and do housework. In March, claimant developed low back pain after falling in the bathroom. She was admitted to the hospital for a lumbar myelogram and was discharged two days later with a notation that her fusion was well healed and she would no longer have to wear a back brace.
 
 
 7
 Periodically over the next eight years, claimant saw various physicians, chiefly for relief from back pain. Claimant's other complaints included leg, stomach, and chest pains. In the fall of 1989, claimant underwent various diagnostic procedures at the Oklahoma Memorial Hospitals and Clinics for her back and leg pain. The physicians determined that claimant's pain was more likely due to arachnoiditis (inflammation of the membrane covering the spinal cord) than to an unstable fusion, and therefore further surgery was not likely to help. Claimant was referred to the Pain Clinic and told to return as needed. A follow-up examination report in January 1990 noted that the orthopedic surgeons did not recommend further surgery and the neurosurgery department, which also had followed claimant, did not recommend any definitive treatment.
 
 
 8
 Once a claimant establishes that she is unable to return to her past relevant work, the burden shifts to the Secretary to establish that the claimant "retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy." Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.1988). Claimant contends that she is unable to work "because of severe and constant pain, particularly caused by back problems." Appellant's Br. at 12.
 
 
 9
 "[D]isability requires more than mere inability to work without pain. 'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.' " Brown, 801 F.2d at 362-63 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir.1983)). We set forth the framework for evaluating claims of disabling pain in Luna v. Bowen, 834 F.2d 161, 163 (10th Cir.1987).
 
 
 10
 Claimant contends the ALJ erred at the last step of the Luna analysis, at which the ALJ must consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain," id. Specifically, claimant argues that the ALJ erred in finding her able to perform sedentary work even though she alleges she cannot sit for six out of eight hours a day. Claimant interprets Social Security Ruling 83-10 to require someone performing sedentary work to sit for a total of six hours a day. We disagree. SSR 83-10 states that some standing and walking is often necessary in sedentary work, but these activities generally total no more than two hours out of an eight-hour day; the worker may sit the remainder of the time. The ruling does not say that a worker who needs to stand more often cannot do so. The vocational expert testified that there are numbers of sedentary jobs claimant can perform that give her the option to sit or stand at will, and the ALJ relied on this testimony in determining claimant can perform other work in the national economy.
 
 
 11
 Next, claimant argues that because she was represented by a paralegal and not an attorney at the hearing, the ALJ owed her the same heightened duty to develop the record that he would have if she had not been represented at all. But see Hudson v. Heckler, 755 F.2d 781, 784-85 (11th Cir.1985)(declining to treat a claimant represented by a paralegal "like unrepresented and often unsophisticated claimants completely unfamiliar with the law or with agency practice"). An ALJ has a general duty " 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.' " Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)(quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983)(Brennan, J., concurring)). If a claimant is pro se, the ALJ has a heightened duty of inquiry. That heightened duty requires an ALJ to ask "sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." Musgrave v. Sullivan, 966 F.2d 1371, 1375 (10th Cir.1992).
 
 
 12
 Claimant argues the ALJ breached his duty to develop the record by failing to establish how long she can sit, stand, walk, lift, and carry comfortably. Even if we apply the heightened standard to the situation here, claimant's arguments do not demonstrate error. Claimant was questioned about her daily activities and how her impairments impacted them. She testified that she could sit for thirty minutes at a time. The ALJ specifically found that claimant could not engage in an extensive amount of standing and walking, and asked the vocational expert to take these facts into account when determining whether claimant could perform sedentary jobs in the national economy. Claimant does not contest the ALJ's conclusion that she could lift a maximum of ten pounds, which was the same conclusion reached by one of claimant's treating physicians. Furthermore, the ALJ gave claimant and her representative several opportunities to add any information to the record that had not yet been elicited, and claimant does not indicate how her testimony would have differed had the ALJ asked more probing questions. See Jordan v. Heckler, 835 F.2d 1314, 1315-16 (10th Cir.1987); Born v. Secretary of Health & Human Servs., 923 F.2d 1168, 1172 (6th Cir.1990). Under the circumstances, we are not persuaded by claimant's argument that the ALJ failed to develop the record.
 
 
 13
 Finally, claimant argues that the ALJ failed to elicit adequate and proper vocational testimony. She contends that the paralegal's questioning of the vocational expert was insufficient and, therefore, the ALJ "had an affirmative duty to develop [claimant's] claim by eliciting proper cross-examination in the form of correct hypothetical questions." Appellant's Br. at 17. Specifically, claimant argues that the ALJ should have incorporated in his hypothetical questions those limitations that Dr. McCann, one of claimant's treating physicians, opined she had. We disagree.
 
 
 14
 First, we note that the paralegal representing claimant questioned the vocational expert about the requirements of the specific jobs he opined claimant could perform. The paralegal also questioned the vocational expert about claimant's ability to perform these jobs if claimant had additional limitations that the ALJ did not include in his hypothetical questions.
 
 
 15
 Second, we reject claimant's contention that the ALJ's hypothetical questions were improper. Claimant's assertions that the law of this circuit regarding hypothetical questions is unsettled and that we "really do[ ] not understand the procedures involved in the use of vocational expert witnesses in Social Security Disability cases," Appellant's Br. at 21, are meritless. So long as the findings of the ALJ regarding the claimant's limitations are supported by the record and are adequately reflected in the ALJ's hypothetical questions to the vocational expert, the latter's testimony in response to those questions provides a proper basis for determining whether the claimant is disabled. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.1993). The ALJ need not include in his hypothetical questions those alleged limitations on the claimant's ability to work that he does not accept as true.
 
 
 16
 Here, the ALJ rejected Dr. McCann's opinion on the ground that it was based only on what claimant told him about her ability to work--not on objective medical evidence or Dr. McCann's own observations--and the ALJ did not believe the record supported claimant's allegations about her ability to work. Because he properly rejected Dr. McCann's opinion, see Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir.1992), the ALJ did not err in failing to incorporate that opinion into his hypothetical questions.
 
 
 17
 The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3