**Frank J. SIEDLECKI, Jr., Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 1:97 CV 0382.**

United States District Court, N.D. Ohio, Eastern Division.

April 14, 1999.

by failing to contact IWI before asking for contempt of court. *See* Defendant IWI, Inc.'s Legal Memorandum, at 6.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge David S. Perelman. The Report and Recommendation (Document # 24), submitted on January 4, 1999, is ADOPTED, but for reasons other than those relied on by the Magistrate Judge.

### Factual and Procedural Background[1]

On June 17, 1993, Plaintiff filed an application with the Social Security Administration (SSA) for disability insurance benefits (DIB), pursuant to 42 U.S.C. §§ 416 and 423, alleging disability since September 10, 1988. Plaintiff, born on March 14, 1949, has an eleventh grade education and has worked as a chemical mixer, warehouse worker, and chemical worker. He complains of debilitating back pain, with resulting numbness and pain in his legs. Plaintiff met the disability insured status requirements and was fully insured from his onset date of September 10, 1988, through December 31, 1993.

Plaintiff injured his lower back, right leg, and left great toe in a work accident in 1987. In June of 1988 Plaintiff had the first of five surgeries on his back; Plaintiff had a lumbar laminectomy and discectomy. Plaintiff stopped working as of September 11, 1988. From May 30, 1989, until July 14, 1989, Plaintiff participated in a rehabilitation program provided by the Industrial Commission of Ohio. When Plaintiff first entered the program, his baseline tolerance for sitting was recorded at 43 minutes and his tolerance for standing was 30 minutes. Upon discharge, Plaintiff achieved a sitting and standing tolerance of 60 minutes for each activity.

On August 19, 1989, Plaintiff was admitted to the hospital for a contusion of the right hip, right buttock, great toe, and lower back. Plaintiff was hospitalized for his back pain from December 13 to December 31, 1989. He revisited the hospital for back pain in January and April of 1990.

On April 19, 1990, the second back surgery—a lumbar laminectomy with left L5 discectomy and lysis—was performed. On May 14, 1991, Plaintiff underwent the third back surgery—another lumbar laminectomy with L5 total disc replacement and iliac bone graft. August of 1991 found Plaintiff undergoing a fourth back surgery for removal of a loose bone fragment and left L4 laminectomy and lysis. On September 19, 1991, Plaintiff visited his doctor, complaining of severe back pain. Plaintiff was using a cane to walk.

Plaintiff underwent treatment and rehabilitation at the Cleveland Pain Management Center (CPMC) in 1992 and 1993. His range of motion was reported as limited to 20 degrees of forward flexion and 5 degrees of extension. In August of 1992, Plaintiff's left wrist and left ankle were fractured in a fall at his home; Plaintiff's left leg "gave out" as he carried a basket of laundry down a stairway. On May 7, 1993, Dr. James Lundeen, the director of CPMC, wrote a letter stating that Plaintiff complained of constant pain across his low back with radiating pain in both lower extremities. Dr. Lundeen reported that Plaintiff was still having severe back spasms and tenderness.

---

1. The factual background is based upon the pleadings and transcript of the record. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

After an appointment with his surgeon, Dr. Young Kim, on July 13, 1993, Plaintiff was diagnosed with an intractable sciatica. Dr. Kim advised that Plaintiff be admitted to an outpatient care facility for testing and treatment consisting of left L5 root block and lumbrosacral block. Plaintiff has received numerous epidural blocks. In January of 1995—a year after his DEB expired, Plaintiff underwent a fifth back surgery—a left L5 laminectomy, lysis, and foraminotomy, as well as a left L4 laminectomy, lysis, and foraminotomy. The record shows that Plaintiff has been taking prescribed medication, such as Tylenol # 4, Valium, Vicoden, Soma, and Percoset, off and on since the 1987 accident.

Plaintiff filed his application for DIB on July 17, 1993. The SSA denied Plaintiff's application both on an initial review and on reconsideration. Plaintiff's application for benefits was subsequently denied by an administrative law judge (ALJ) on February 9, 1996. Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council on April 12, 1996. The ALJ's decision became final upon denial of review by the Appeals Council on December 6, 1996.

On February 19, 1997, Plaintiff filed a Complaint with this Court pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of Plaintiff's application for DIB. After remanding the case to the Commissioner, and then reopening the case, this matter was referred to Magistrate Judge Perelman for the preparation of a report and recommendation.

Magistrate Judge Perelman filed his Report and Recommendation (Document # 24) on January 4, 1999, recommending that the Defendant's decision denying benefits to Plaintiff should be reversed and the matter remanded for further proceedings. On January 20, 1999, Defendant filed timely objections to the Magistrate Judge's Report and Recommendation. Plaintiff filed a reply to Defendant's objections on February 23, 1999.

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the *case de novo.* FED.R.CIV.P. 72(b) provides this standard of review. It states, in pertinent part:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Because timely objections have been filed, the Court reviews Magistrate Judge Perelman's Report and Recommendation *de novo.*

It is important to note that the standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ and the Appeals Council, is limited to whether the ALJ applied the correct legal standards in reaching her decision and whether there is substantial evidence in the record to support the Commissioner's factual findings. *See* 42 U.S.C. § 405(g); *Smith v. Secretary of Health and Human Servs.,* 893 F.2d 106, 108 (6th Cir.1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993) (citation omitted).

## Discussion

In his Report and Recommendation, the Magistrate Judge determined that the ALJ's decision was not supported by substantial evidence because "there is no expert medical opinion evidence in the record speaking to the issue of the reasonableness of the plaintiff's pain complaints in light of that history and/or the specific physical abilities the plaintiff could reasonably be expected to possess." The Magistrate Judge concluded that "this case should not have been resolved without the ALJ having the benefit of testimony from a medical expert and that on the record as it now stands no reasonable determination can be made whether as of December 31, 1993[,] the plaintiff was or was not disabled, as that term is defined for the purpose of a Social Security disability claim."

Defendant objects. Defendant argues that finding the ALJ erred because the ALJ failed to call a medical expert at the administrative hearing is not a proper basis for reversal or remand under Social Security law and regulations. Defendant is correct inasmuch as the relevant regulations give the ALJ discretion to decide whether or not to call on a medical advisor. *See* 20 C.F.R. §§ 404.1527(f)(2), 404.1529(b). Further, the ALJ is responsible for reviewing the evidence and making findings of fact and conclusions of law, 20 C.F.R. § 404.1527(e), and has the duty to resolve conflicts in the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

However, the ALJ determined that Plaintiff has "no nonexertional limitations" and "has the residual functioning capacity [RFC] to perform the full range of sedentary work", and therefore, the ALJ relied completely on the grid (20 C.F.R. pt. 404, subpt. P., app. 2, table no. 1) to decide that Plaintiff is "not disabled." The record lacks substantial evidence to support the ALJ's conclusion that Plaintiff has the RFC to perform the full range of sedentary work and has no nonexertional limitations. Rather, there is substantial evidence showing that Plaintiff has severe combined exertional and nonexertional limitations. Thus, the matter must be remanded to the Commissioner to determine, in consultation with a vocational expert, whether or not sedentary work exists in significant numbers in the national economy for a person who has postural limitations and has a baseline sitting and standing tolerance of 60 minutes.[2]

Disability insurance benefits are available only to those individuals who can establish "disability" within the terms of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Plaintiff bears the burden of showing "that he is unable to engage in any substantial gainful activity by reason of any 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....'" *Garland v. Shalala*, 78 F.3d 584, 1996 WL

---

**2.** The record is uncontroverted that Plaintiff suffers from degenerative disc disease and has undergone five back surgeries, resulting in one total disc replacement and multiple laminectomies and fusions. In addition, Plaintiff was diagnosed with an intractable left sciatica, has had numerous epidural blocks for pain, and has been on prescribed pain medication for years. After reviewing the record and holding a brief hearing, the ALJ determined that Plaintiff was "not disabled" by his pain, medical, and physical conditions. "If it is supported by substantial evidence, the [Commissioner's] decision must stand regardless of whether the reviewing court would resolve the issue of fact in dispute different-

ly." *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990) (citation omitted). Because the ALJ's determination of the record and Plaintiff's credibility at the hearing "is invaluable and should not be discarded lightly," *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987), the Court hesitates to disturb the ALJ's determination that Plaintiff is not totally disabled. However, because Plaintiff has severe combined exertional and nonexertional limitations, "[t]he testimony of a vocational expert was required to satisfy the [Commissioner's] burden of proof regarding the availability of jobs which claimant could exertionally handle." *Born*, 923 F.2d at 1174 (citations omitted).

99809, at *6 (6th Cir. Mar.5, 1996) (unpublished) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ follows a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a).

First, if the claimant is working, benefits are automatically denied. 20 C.F.R. § 404.1520(b). Second, if a claimant is not ·found to have an impairment which significantly limits her ability to work (a severe impairment), then she is not disabled. 20 C.F.R. § 404.1520(c). Third, if an individual is not working and is suffering from a severe impairment, it must be determined whether she suffers from one of the listed impairments; if so, benefits are owing without further inquiry. 20 C.F.R. § 404.1520(d). Fourth, if an individual is not suffering from a listed impairment, it must be determined if the individual can perform work she has done in the past; if so, she is "not disabled." 20 C.F.R. § 404.1520(e). However, if an individual's impairment is so severe as to preclude the performance of past work, the burden shifts to the Commissioner to determine, given other factors including age, education, past work experience, and RFC, whether or not the individual retains the capacity to perform a different kind of job. 20 C.F.R. § 404.1520(f). *See Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990); *Garland*, 78 F.3d 584, 1996 WL 99809, at *6. "The [Commissioner's] burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the 'grid.'" *Born*, 923 F.2d at 1173 (citing 20 C.F.R. § 404.1569; 20 C.F.R. pt. 404, subpt. P., app. 2, table no. 1).

This case centers on step five. The ALJ determined that Plaintiff could no longer perform his past relevant work, but that, "due to the claimant's complaints of pain, he could be found to perform work that would be defined as sedentary."[3] Finding that the Plaintiff was a "younger person" and had an eleventh grade education, the ALJ decided that Plaintiff "can perform at a level of work commonly defined as sedentary. When a claimant can perform·the full range of sedentary work, Rule 201.18, Table No. 1, Appendix 2, Subpart P of Regulations No. 4 [the grid] directs a conclusion that the claimant is 'not disable.' [sic]"

The ALJ found that Plaintiff "has the residual functional capacity to perform the physical exertion requirements of work except for lifting over 10 pounds maximum and performing prolonged standing or walking"; has "no nonexertional limitations"; and, "has the residual functional capacity to perform the full range of sedentary work." These findings fail to consider any postural limitations and assume that Plaintiff does not need an exception for prolonged sitting. This conclusion is not supported by substantial evidence. Plaintiff's sitting tolerance of 60 minutes and postural limitations are limitations severe enough to restrict a full range of gainful employment. "In such cases, it is incumbent upon the ALJ to consult a vocational expert to determine what impact the claimant's limitations will have on [his] remaining occupational base." *Matelski v. Commissioner of Social Security*, 149 F.3d 1183, 1998 WL 381361, at *6 (6th Cir. June 25, 1998) (unpublished) (citation omitted). *See also Holbrook v. Callahan*, 142 F.3d 434, 1998 WL 69849, at *1 (6th Cir. Feb.10, 1998) (unpublished) (Because limitations

---

3. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves *sitting, a certain amount of walking and standing is often necessary in carrying out job duties*. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). " 'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours in an 8–hour workday." S.S.R 83–10.

from back pain, hypertension, and pneumonoconiosis were significant, "the ALJ was required to obtain the testimony of a vocational expert to determine whether [claimant] could perform a significant number of jobs in the economy."); *Born,* 923 F.2d at 1174 ("[Claimant's] nonexertional limitations, which allowed him to work only six hours per shift duration and required a sit/stand option ... precluded him from performing a full range of sedentary work .... [and thus,] the ALJ was required to make a nonguideline determination.") (citations omitted); *Wages v. Secretary of Health and Human Servs.,* 755 F.2d 495, 498 (6th Cir.1985) (holding it is error for the ALJ to rely on the grid and conclude that "claimant could do a full range of sedentary work[,] since the evidence demonstrated the claimant could work only if it permitted him to alternate between sitting and standing as required by his comfort.").

Defendant maintains that the ALJ's finding that Plaintiff retained the RFC to perform the full range of sedentary work is supported by the opinions of two reviewing medical consultants and the June 1989 physical therapy notes from the Industrial Commission of Ohio's rehabilitation program. The two medical consultants are Dr. Quillin and Dr. Holbrook. Dr. Quillin, on 9/14/93, filled out an RFC assessment form. The form's instructions state that it will take the reviewing doctor 20 minutes to read the instructions, gather all the necessary facts, and fill out the form. In his brief assessment, Dr. Quillin checked a box that Plaintiff could stand, walk, and sit about 6 hours in an 8–hour workday. In the area reserved for Dr. Quillin's written explanation are approximately thirteen, mostly illegible, words.[4] Dr. Holbrook reviewed this assessment form on 3/25/94.

The June 1989 physical therapy notes do not support the conclusion that Plaintiff has the RFC to perform the full range of sedentary work; rather, the notes conflict with Dr. Quillin's RFC assessment form and, in fact, direct an opposite conclusion. The treatment summary concludes that Plaintiff is able to maintain only "60 minutes sit/stand tolerances for return to work" and that he is "able to incorporate pain management techniques of pacing and back conservation." It also notes that Plaintiff was prescribed Tylenol # 4 (up to 4 times per day) and Valium 10mg (twice per day).

Defendant also points to a letter from Dr. Rojas (an associate of Plaintiff's surgeon, Dr. Kim), who stated that Plaintiff should "avoid heavy lifting or sudden bending." Defendant contends that a recommendation to avoid heavy lifting "is consistent with sedentary work." This does not follow. A directive to avoid heavy lifting and sudden bending, while providing an inference that light lifting and slow bending is permissible, simply cannot be interpreted as an endorsement to perform the full range of sedentary work.

Finally, Defendant points to Dr. Lundeen's response to a letter from the Rehabilitation Services Commission (RSC). Defendant claims that Dr. Lundeen reported that Plaintiff's ability to stand, walk, and sit was "normal." Dr. Lundeen's response, dated 7/15/93, to the RSC's four-page letter was 16 full or partial words. In response to a request for a statement of claimant's abilities, Dr. Lundeen wrote "WNL" next to standing, speaking, and sustained concentration and persistence. He wrote "—minimal" next to lifting, and placed ditto marks by the following task, which was carrying. Defendant implies that "WNL" applies to everything but lifting and carrying. While this is possible, it is equivocal. Dr. Lundeen's unabridged opinion can be read in his letter dated 10/14/94, in which Dr. Lun-

---

4. "A medical advisor's opinion which is based solely on a review of medical records rather than upon actual physical examination is entitled to less weight than the report of any other physician who examines the patient. A medical advisor's opinion is entitled to little weight if it contradicts the opinion and clinical findings of the treating physician." *Peter v. Apfel,* 172 F.3d 49, 1998 WL 869987, at *2 (6th Cir.1998) (citations omitted).

deen states that Plaintiff's "conditions of degenerative disc disease at L4 and L5, by definition, continue to deteriorate.... It is my opinion that, at this time, Frank Siedlecki remains temporarily and totally disabled from employment."

In addition to the June 1989 physical therapy notes from the Industrial Commission of Ohio's rehabilitation program, which record Plaintiff's tolerance for sitting at 60 minutes, the evidence is substantial that Plaintiff's combined exertional and nonexertional limitations are severe enough to restrict the full range of sedentary employment. In a report from St. Vincent Charity Hospital, dated 9/12/89, Plaintiff is described as having "severe pain in the back with radiation down the posterior left thigh with paresthesia and hyperesthesia of the leg, with inability to ambulate.... There was ... tenderness to palpitation with spasm overlying the lumbrosacral spine and paraspinal muscles extending into the left buttock and thigh with guarding." After this report, Plaintiff had four more back surgeries; one in 1990, two in 1991, and one in 1995.

From March 1992 to March 1993, after his fourth back surgery, Plaintiff underwent therapy at CPMC under the direction of Dr. Lundeen. The notes from Plaintiff's therapy sessions are further substantial evidence that Plaintiff has significant exertional and nonexertional limitations. For example, on February 29, 1992, it was reported that Plaintiff has "[s]evere pain in his left leg. He sits with his leg out-stretched and twisted in the chair to minimize his discomfort from his left sciatic nerve pain, which his surgeon ... stated that it may be a chronic type of left sciatic pain." On October 31, 1992, it was reported that Plaintiff "[c]omplains of very severe pain, [he has] very limited mobility, [and is] unable to stand or sit for any length of time due to back pain."

Plaintiff has received several other reports by examining doctors. While none of the reports address Plaintiff's ability to sit specifically, they all concur that Plaintiff suffers from lower back pain. On October 14, 1994, Dr. Lundeen states that it is his opinion that Plaintiff remains temporarily and totally disabled from employment. On December 21, 1994, Dr. Hergenroeder states that Plaintiff has "a very limited range of motion with obvious pain, weakness and lack of flexibility" and concludes that he believes Plaintiff "is permanently disabled." On February 1, 1995, Dr. Kim reports that a "[n]eurological exam disclosed low back and left leg pain." Finally, Dr. Katz, in a letter prepared for the Bureau of Workers' Compensation, stated that Plaintiff "still complains of pain all over the lower back and over both legs that is constant." Dr. Katz concluded that he feels Plaintiff "is unable to do things that require lifting over five to eight pounds at a time or much bending, stooping, or prolonged standing and walking. He would be unable to work in a factory or do any labor type of work. I feel he would be a candidate for a pain management clinic at The Cleveland Clinic in an effort to wean him off the [prescribed] narcotics, help him deal with the pain, and hopefully get him back to some type of job with the above type of restrictions."

Because Plaintiff suffers from significant combined exertional and nonexertional limitations, the ALJ is permitted to use the grids only as a framework for making the decision of whether or not Plaintiff is disabled. *See Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir.1990); S.S.R. 83–12 ("In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base."). When a claimant has significant limitations, "it is incumbent upon the ALJ to consult a vocational expert to determine what impact the claimant's limitations will have on [his or] her remaining occupational base." *Matelski*, 149 F.3d 1183, 1998 WL 381361, at *6. This is especially important in a case such as this, where the Plaintiff has postural limitations and a 60 minute sitting and standing tolerance. The ALJ did not consult a

736

vocational expert. As such, the case must be remanded for the ALJ to do so.

On remand, the ALJ should determine whether or not work exists in significant numbers in the national economy for a person who has postural limitations and a 60 minute sitting and standing tolerance. This analysis must accurately and completely consider Plaintiff's impairments. *See Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987).

### Conclusion

For the foregoing reasons, the Magistrate Judge's Report and Recommendation (Document # 24) is ADOPTED. Consistent with this ruling, the final decision of the Commissioner of Social Security is REVERSED and the case is REMANDED for further proceedings.

IT IS SO ORDERED.