Karen S. LAWSON, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Case No. 1:09–cv–078.

United States District Court,
S.D. Ohio,
Western Division.

March 2, 2010.

Gary Marc Blumenthal, Dayton, OH, for Plaintiff.

John J. Stark, US Attorney Office, Columbus, OH, Henry S. Kramzyk, Social Security Administration Office of General Counsel, Yvette S. Sanders–Guyton, Social Security Administration, Chicago, IL, for Defendant.

## ORDER

SANDRA S. BECKWITH, Senior District Judge.

Defendant, the Commissioner of Social Security, has filed objections to the Magis-

trate Judge's Report and Recommendation concerning Plaintiff's claim for Social Security Disability benefits. The Magistrate Judge recommends that this Court reverse the final decision of the Commissioner denying Lawson's claim for disability benefits. (Doc. 19) His Report concludes that the ALJ did not evaluate Lawson's fibromyalgia impairment in accordance with Sixth Circuit precedent, and failed to properly consider her treating physicians' opinions about her functional limitations. The Commissioner objects, arguing the ALJ properly considered the treating physicians' opinions, and that his decision concerning her functional capabilities is supported by substantial evidence. (Doc. 20)

## FACTUAL BACKGROUND

Lawson filed two prior applications for benefits, one in October 1995 and another in May 1999. Both of those applications were denied at the hearing level, and she did not pursue judicial review. Her current application dated September 25, 2001 alleges an onset disability date of December 7, 2000. (TR 806–807) She claimed she is disabled by a back injury, muscle weakness, rheumatoid arthritis and tissue disease, fatigue and depression. Her application was initially denied after a May 2003 ALJ hearing, at which both Lawson and Dr. Dan Elliott, a medical expert for the Commissioner, testified. (TR 1392–1426) The ALJ found that she had no exertional or strength limitations. (TR 744) The Appeals Council vacated this decision and remanded the case with instructions to further evaluate Lawson's mental impairments, as well as her treating physicians' opinions concerning the extent of her physical impairments. (TR 760–763)

After remand, the ALJ conducted an additional hearing on October 5, 2006, at which Lawson, a psychological expert, and a vocational expert all testified. (TR 1441–1480) The ALJ subsequently issued a decision in which he found that Lawson suffers from several severe impairments: (1) lumbar spine arthritis and/or fibromyalgia; (2) left elbow ulnar nerve compression residuals; (3) dysthymia with recurrent major depression; (4) generalized anxiety disorder; and (5) borderline intellectual functioning. The ALJ found that none of these impairments meet or equal the Listings. Based upon his assessment of the record evidence, the ALJ found that Lawson lacked the residual functional capacity to: (1) lift more than ten pounds frequently or twenty pounds occasionally; (2) do any job requiring prolonged resting of her left elbow on a hard surface; (3) climb ladders or scaffolds; (4) work at unprotected heights or around moving machinery; (5) follow complex instructions; (6) do any job involving over-the-shoulder job supervision or requiring claimant to work as part of a team with others; (7) have greater than occasional contact with the public; or (8) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). These limitations are generally compatible with a limited range of light work. (TR 35–36) Although Lawson lacks past relevant work experience or skills, the ALJ concluded that she was able to perform a significant number of available jobs prior to August 23, 2006, her 55th birthday. After that date, the ALJ found Lawson to be disabled under the Medical–Vocational Guideline Rules, given her age, the RFC assessment, her limited education, and her lack of work skills.[1] (TR 42–43)

1. See Rule 202.01, 20 C.F.R. Part 404, Appen-  dix 2, deeming individuals capable of light

Lawson unsuccessfully sought review of this decision by the Appeals Council, and then timely filed a complaint in this Court. She claims two errors in the Commissioner's decision: (1) the ALJ's residual functional capacity assessment improperly rejected the opinions of her treating physicians concerning the limitations caused by her fibromyalgia, opinions that the Commissioner's medical expert did not contradict; and (2) the ALJ misapplied *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) by rejecting some of the physical limitations adopted in the prior December 2000 ALJ opinion.

The Magistrate Judge concluded that the ALJ failed to evaluate Lawson's fibromyalgia impairment as required by Sixth Circuit precedent. He also found that the ALJ improperly evaluated and weighed the opinions of Dr. Joseph Garland, Lawson's long-standing primary treating physician, concerning Lawson's physical limitations. In three separate assessments, Garland found that Lawson was limited to lifting and carrying no more than ten pounds, standing or walking for one hour per day, and sitting for three hours per day due to her mixed connective tissue disorder and/or fibromyalgia. Garland consistently opined that due to these limitations, Lawson was incapable of full or part time work. (TR 1035–36, 895–96, and 1264) Dr. Pedoto, who examined Lawson in June 2002 at Dr. Garland's request, found that Lawson was "most appropriate for a sedentary type position with occasional lifting in the range of 10 pounds." (TR 1103) His restrictions were consistent with Dr. Garland's.

The ALJ relied on the 2003 testimony of Dr. Dan Elliott, the testifying, non-examining medical expert. (TR 41) Dr. Elliott, a

work who are of "advanced age" (55 or older), with limited education and no previous work skills, to be disabled. The Commission-

retired general surgeon, noted the absence of a recorded trigger point test to confirm Lawson's fibromyalgia diagnosis. (TR 1418) While he accepted the treating physicians' diagnosis of "some form of fibromyalgia," he noted a lack of clinically-documented joint changes. (TR 1410) He also admitted that positive joint findings (such as swelling) were not necessary to a diagnosis of fibromyalgia. (TR 1413) When asked about the restrictions recommended by Lawson's treating physicians, Elliott responded: "Truthfully, I can't really tell you what sort of restrictions that she should have. I haven't examined her.... I have no basis for disagreeing [with Dr. Garland's functional assessments]." (TR 1419) The ALJ concluded that Dr. Garland's functional capacity assessments "are grossly disproportionate to the available objective medical evidence, and they thus lack the necessary supportability to entitle[ ] them to even deferential or other preferential weight." (TR 40) He specifically cited the minimal x-ray findings, Lawson's "unremarkable" MRI, and her largely normal clinical examination results.

The Commissioner objects to the Magistrate Judge's Report, arguing that the Magistrate Judge improperly engaged in his own fact-finding, and independently weighed the record evidence. The Commissioner contends that the ALJ appropriately considered and then largely rejected Dr. Garland's opinions on Lawson's limitations because the record does not support her claims of disabling pain and lack of mobility. Therefore, the Commissioner argues that substantial evidence supports the ALJ's decision.

## DISCUSSION

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision by

er did not appeal this portion of the ALJ's decision.

determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." *LeMaster v. Secretary of Health and Human Serv.*, 802 F.2d 839, 840 (6th Cir.1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. *Id.*

■ If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. *Elkins v. Secretary of Health and Human Serv.*, 658 F.2d 437, 438 (6th Cir.1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). Moreover, the ALJ need not accept a medical opinion that a claimant is "disabled" (and therefore unemployable) as that determination rests with the Commissioner under 20 C.F.R. § 404.1527(e)(1).

■ The district court reviews de novo the Magistrate Judge's report and recommendation regarding Social Security benefits claims. *Ivy v. Secretary of Health & Human Serv.*, 976 F.2d 288, 289–90 (6th Cir.1992).

This Court has reviewed the extensive record in this case. That record confirms that Dr. Garland has treated Lawson since at least 1992. By the mid 1990's, Garland and Dr. Griffin, a rheumatologist at the Miami Valley Hospital to whom Garland referred Lawson, had both consistently noted that Lawson was suffering from an unspecified connective tissue disease. For instance, in October 1995 she complained of stiffness and soreness in most joints, and lab tests revealed an elevated ANA and rheumatoid factor. Both of these are markers of inflammation and are consistent with fibromyalgia. Garland's and Griffin's treatment notes document over time Lawson's consistent complaints of muscle weakness, difficulty with sitting and standing or remaining in one position for any period of time, tingling or "pins and needles" sensations, and pain in her neck, back, and legs. On September 2, 1999, Griffin diagnosed poorly differentiated connective tissue disorder (a type of autoimmune disease).

Lawson was referred for an orthopedic consultation in April 1996 due to her continuing complaints of pain. That examination revealed no objective neurological findings and no skeletal abnormalities, and the doctor suspected that her pain was produced by the connective tissue disorder. (TR 1011)

Garland referred Lawson for an examination by Dr. Pedoto, a specialist in physical medicine and rehabilitation, on June 5, 2002. (TR 1102–1103) Dr. Pedoto found that Lawson could sit six to eight hours a day but only with frequent breaks, and could stand or walk only one hour with breaks every 15 to 30 minutes. She would have difficulty with repetitive hand or foot actions, and could only occasionally lift more than ten pounds. She would also need ergonomically proper equipment for any job. Dr. Pedoto believed that Lawson was most appropriate for a sedentary-type

position, but doubted she could successfully find long-term employment.

An exam for the state disability bureau on Aug 2, 2000 by Dr. Gary Ray, medical rehabilitation specialist, noted tenderness throughout Lawson's cervical, thoracic, and lumbosacral areas. There was also tenderness throughout her upper and lower extremities, although no joint abnormalities such as swelling or redness were observed. Dr. Ray opined that Lawson had mild osteoarthritis and fibromyalgia, but that she was not significantly restricted in her abilities to lift, carry, sit or stand. (TR 542–550) Another examination performed for the state bureau on Jan 24, 2002 by Dr. Bhaiji found no range of motion limitations, no swelling, and a normal grip in both hands. Bhaiji noted Lawson's generalized muscle weakness and tenderness, but no specific areas of such discomfort. Lawson demonstrated generalized tender points to palpation. (TR 905–907)

The record also reflects that Lawson sought assistance from Jewish Vocational Service, a program that assists disabled individuals with finding jobs. Lawson worked with a job counselor there for over a year, from June 2001 through June 2002. The counselor noted that Lawson exhibited lower back pain during their weekly meetings. Lawson's physical restrictions, including limited stamina, no pushing and pulling, and no lifting over ten pounds, made her job placement almost impossible. (TR 880)

According to a recent Merck Manual entry, fibromyalgia is "a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep." A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom. Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated. Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia." Merck Manual Online Medical Library, http://www.merck.com (last visited February 22, 2010).

The Sixth Circuit has noted that, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ...". *Rogers v. Commissioner*, 486 F.3d 234, 243–44 (6th Cir. 2007). See also *Preston v. Sec'y of Health & Human Services*, 854 F.2d 815, 820 (6th Cir.1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity). In *Rogers*, the ALJ rejected a claimant's diagnosed fibromyalgia as a severe impairment (at step two of the sequential evaluation process). The Sixth Circuit found that the rejection had improperly influenced the ALJ's consideration of the treating physician's opinion about the effects of that disease on the claimant's functional capacity. *Rogers*, 486 F.3d at 243. The court noted that the ALJ failed to address the consistent diagnosis of fibromyalgia in the clinical record, and did not apply the standard diagnostic criteria, which does not require "objective" clinical evidence. The ALJ had instead relied on the opinions of non-examining disability reviewers who were not specialized in rheumatology.

Here, the ALJ found that Lawson's fibromyalgia was a severe impairment, specifically citing Dr. Ray, Dr. Pedoto, and the December 2000 findings of the prior ALJ. The Commissioner does not dispute the diagnosis, but contends that the ALJ's RFC limitations based upon that impairment are supported by substantial evidence.

Lawson's treating physicians, primarily Dr. Garland but also supported by Dr. Pedoto and Dr. Griffin's treatment notes, believe she is incapable of anything but restricted sedentary work at best. The Social Security regulations governing treating physician opinions provide that, "... if the opinion of the treating physician as to the nature **and severity** of a claimant's condition is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record," it will be given controlling weight. *Rogers*, 486 F.3d at 242 (internal citation and quotations omitted; emphasis added). If the Commissioner finds that a treating physician's opinion is inconsistent with or unsupported by the record, the following factors should be discussed in determining the weight that should be accorded that opinion: (1) the length of the treatment relationship and frequency of contact; (2) the nature and extent of that relationship; (3) the evidence provided to support the opinion; (4) consistency between the opinion and the entire record; (5) the treating physician's specialty; and (6) any other relevant factors such as the extent to which the medical source is familiar with other information in a claimant's case record. See 20 C.F.R. § 416.927(d)(2)-(6).

Applying these factors, Dr. Garland's opinion should have been accorded significant, if not controlling weight. He has treated Lawson for almost 20 years, while Dr. Elliott did not examine Lawson. Garland's long-standing relationship with Lawson provides a sound basis to credit his conclusions in lieu of Dr. Elliott's. Garland's opinion on Lawson's restrictions is based upon his own observations and findings, as well as the results of the examinations and tests that he ordered, particularly Dr. Pedoto and Dr. Griffin. Dr. Garland is a family practitioner, Dr. Griffin specializes in rheumatology, and Dr. Pedoto in physical medicine and rehabilitation. Given the nature of fibromyalgia, as recognized by the Sixth Circuit, the lack of objective clinical findings or tests does not contradict their opinions on Lawson's functional capacity, but rather is consistent with the entirety of the evidence. The treating physicians, particularly Garland, are also far more familiar with Lawson's entire history, while Elliott was not.

The ALJ rejected Dr. Garland's opinions and relied more heavily upon the opinion of Dr. Elliott. Elliott did not examine Lawson, and believed that she was not significantly limited in any physical respect save for her left elbow problem. But as noted above, Dr. Elliott admitted that he could not really say what sort of physical restrictions would be appropriate for Lawson, and had no basis upon which to disagree with Garland's assessment. Moreover, Dr. Elliott did not have the benefit of Dr. Pedoto's report, which more closely documents the areas of tenderness and pain he observed, or of the Jewish Vocational Service evaluation. Both of these reports were first included in the record with Lawson's request for Appeals Council review of the 2003 Decision. (TR 758) Dr. Elliott did not testify again in the most recent 2006 hearings.

The ALJ also discounted Dr. Bhaiji's RFC restrictions because his objective findings were normal. Dr. Bhaiji specifically noted both generalized muscle weakness and tenderness, as well as tender

points to palpation. The fact that Bhaiji did not document any swelling or range of motion limitations is an insufficient basis to reject his conclusions. Similarly, Dr. Ray's examination in August 2000 documented extensive tenderness in all areas typical to fibromyalgia pain. But largely due to a lack of joint swelling or redness and normal range of motion, Dr. Ray concluded her impairment did not significantly restrict her physical function, a conclusion the ALJ also specifically cited. But once again, joint swelling and restricted range of motion are not accepted or required diagnostic criteria, and their absence alone does not support with a finding of no functional limitations. The ALJ similarly questioned Pedoto's assessment because he noted "only some findings of general tenderness." (TR 40) But while Pedoto's written report does not specifically recite the number of trigger points, it clearly documents tender points over twelve muscle areas that are typical to fibromyalgia.

The ALJ also discounted Lawson's subjective complaints, because her descriptions of her problems varied over time and did not correlate with the objective medical findings. Neither of these observations are a proper basis to reject her consistent descriptions of stiffness, lack of ability to move, and pain. Fibromyalgia, like other chronic conditions, is likely to cause different magnitudes of symptoms over time, especially in view of the fact that its clinical causes are simply unknown. And the fact that her subjective complaints do not correlate with the objective medical findings is the hallmark of a fibromyalgia diagnosis. See Preston, 854 F.2d at 820 ("fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'") Garland, Griffin, and Pedoto do not express any concerns about Lawson's credibility in reporting her symptoms. Nor did the job counselor at Jewish Vocational Service, who worked closely with Lawson for over a year.

The ALJ also discounted Lawson's subjective complaints because he found that Lawson was able to function relatively independently, and that she "has been able to do housework, pursue pasttimes such as crafts, reading and videogames, watch her grandchild, drive, and shop." (TR 41) He also noted that Lawson's impairments "have been managed conservatively without resort to major surgery or other intensive therapies . . .". (Id.)

Lawson actually testified that she was able to drive a couple times a week (TR 1396); that she had difficulty taking pain medications and could not take most of what had been prescribed for her (TR 1398–99); that she could do some housework occasionally (TR 1401); she could read 4 to 6 hours a day (TR 1402); and she saw her daughter a couple times a week. At the 2006 hearing, she described increasing difficulties sleeping at night. (TR 1447–1449) In Rogers, the Sixth Circuit specifically criticized the ALJ's reliance on a claimant's ability to engage in activities such as driving, cleaning her apartment, caring for her dogs, doing laundry, reading, performing stretching exercises, and watching the news, as justification for rejecting her subjective complaints of disabling pain. The court noted that "these somewhat minimal daily functions are not comparable to typical work activities." Id., 486 F.3d at 248. This was especially true because the claimant's activity level was actually less than the ALJ's broad descriptions suggested. Like the claimant in Rogers, Lawson's actual descriptions of her activity level do not suggest that she is relatively "active" nor contradict her descriptions of her physical limitations. And the ALJ's critique of "conservative management" and a lack of surgery are simply

inapposite to treating fibromyalgia and its symptoms.

The Commissioner argues that the absence of documented neurological deficits or muscle atrophy clearly detract from Lawson's subjective complaints of disabling pain. Since the ALJ "explained" why he rejected or discounted the opinions of both Dr. Garland and Dr. Pedoto, the Commissioner argues that substantial evidence in the record supports the ALJ's RFC conclusions. The Court must disagree. As was noted in *Rogers,* the absence of neurological deficits, and the presence of normal muscle or grip strength, are precisely the type of clinical findings expected to be seen in fibromyalgia patients.

The Court therefore agrees with the Magistrate Judge and finds that the ALJ's assessment of Lawson's residual function capacity is not supported by substantial evidence in the record. For that reason, the Court need not address Lawson's second claim of error, regarding the ALJ's failure to adhere to *Drummond* and consider the prior ALJ's findings as binding.

The Court must determine whether to remand this case for rehearing, or to reverse the decision and order that benefits be paid. Under 42 U.S.C. § 405(g), the Court has authority to proceed in either fashion. In order to reverse and award benefits, however, the Court must find that all essential facts have been resolved, and that the record adequately establishes a claimant's entitlement to those benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994).

The Court agrees with both the Magistrate Judge and the Plaintiff that a remand is not necessary, because the record demonstrates that Lawson is entitled to benefits due to her disability. Setting aside Dr. Elliott's opinion that Lawson has no physical restrictions (other than her left

elbow), the medical opinions of her treating physicians support an ability to perform sedentary work at best. Those opinions are entitled to controlling weight. Rule 201.09 of the Medical–Vocational Guidelines would direct a finding of disability for Lawson at her 50th birthday given that restriction because, for the time period in dispute, she was "closely approaching advanced age," has limited education and no relevant past work experience. To order a remand under these circumstances would simply result in unnecessary delay or submission of cumulative evidence. Accordingly, this matter should be remanded for an award of benefits. *Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir.1994).

## CONCLUSION

For the reasons discussed above, the Commissioner's objections to the Magistrate Judge's Report and Recommendation are overruled. The Court hereby adopts the Magistrate Judge's Report and Recommendation in full. The Court reverses the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits, and remands this matter for an award of benefits consistent with this decision.

SO ORDERED.

THIS CASE IS CLOSED.

## REPORT AND RECOMMENDATION

TIMOTHY S. HOGAN, United States Magistrate Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner). Plaintiff appeals the Commissioner's determination that she is not disabled prior to the date she turned 55 years of age. This matter is before the Court on plaintiff's Statement

of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum. (Doc. 18).

## PROCEDURAL BACKGROUND

Plaintiff Karen Lawson was born in 1951 and completed the eleventh grade. She has no past relevant work history and has acquired no work skills. Plaintiff filed a Supplemental Security Income (SSI) application with a protective filing date of September 25, 2001[1] alleging an onset date of disability of December 7, 2000, due to a back injury, fatigue, weak muscles, depression, rheumatoid arthritis, and tissue disease. (Tr. 806–807, 849). Her application was denied initially, upon reconsideration, and by an Administrative Law Judge (ALJ) after a hearing. On appeal, the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 760–63). In particular, the Appeals Council requested further development and evaluation of plaintiff's mental impairments. The Appeals Council also required the ALJ to properly evaluate and weigh the evidence from plaintiff's treating and examining doctors with regard to her physical impairments. (Tr. 761–62).

Three new administrative hearings were held at which plaintiff, who was represented by counsel, a medical expert (ME), and a vocational expert (VE) testified. (Tr. 1427, 1434, 1441). In January 2007, the ALJ issued a decision finding plaintiff to be disabled as of August 23, 2006, when she attained age 55, but not before that date. (Tr. 43). The ALJ determined that prior to August 23, 2006, plaintiff could perform other work in the national economy. (Tr. 44).

The ALJ determined that plaintiff suffers from the following severe impairments: lumbar spine arthritis and/or fibromyalgia; 2) left elbow ulnar nerve compression residuals; 3) dysthymia with recurrent major depression; 4) generalized anxiety disorder; and 5) borderline intellectual functioning. The ALJ found that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 43). The ALJ determined that plaintiff's subjective allegations lack credibility. (Tr. 43). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a reduced range of light work activities. The ALJ found that plaintiff lacks the residual functional capacity to: 1) lift more than ten pounds frequently or twenty pounds occasionally; 2) do any job requiring prolonged resting of the non-dominant left elbow on a hard surface; 3) climb ladders or scaffolds; 4) work at unprotected heights or around moving machinery; 5) follow complex instructions; 6) do any job involving over-the-shoulder job supervision or requiring claimant to work as part of a team with others; 7) have greater than occasional contact with the public; or 8) do other than low stress work activity (*i.e.,* no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). (Tr. 44). The ALJ determined that plaintiff has no past relevant work. The ALJ found that prior to August 23, 2006, the date plaintiff attained age 55, she was able to perform a significant number of other light and sedentary jobs in the national economy. (Tr. 44). As of August 23, 2006, plaintiff was found to be disabled under the Grid Rules for light work given her age, limited education, and lack of transferable work skills. (Tr. 45).

1. Plaintiff filed two previous SSI applications in October 1995 and in May 1999. (Tr. 70, 345). Those applications were denied by ALJs on October 10, 1997 and on December 7, 2000. (Tr. 669, 719). Plaintiff sought no further review on the May 1999 application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir.1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir.1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir.1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employ-

ment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir.1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir.1978). *See also Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir.1987).

■■■ Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852–53 (6th Cir.1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038–39 (6th Cir.1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir.1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of

pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiffs activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039–40.

■■■ Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler,* 742 F.2d 968, 975 (6th Cir.1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039–41.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530–31 (6th Cir.1997). *See also Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984) (same); *Lashley v. Secretary of HHS,* 708 F.2d 1048, 1054 (6th Cir.1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-

examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir.1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner,* 581 F.3d 399, 406 (6th Cir.2009); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004); *Walters,* 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson,* 378 F.3d at

544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.,* 892 F.2d 1043 (6th Cir.1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir.1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher,* 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Secretary of Health*

*and Human Services,* 820 F.2d 777, 782 (6th Cir.1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176. *See also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir.1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 13 at 4–8; Doc. 17 at 2–5)[2] and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case: (1) the ALJ erred in his evaluation of the opinion evidence of plaintiff's treating physician and the medical expert who testified at the hearing in determining plaintiff's RFC; and (2) the ALJ misapplied the rule in *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir.1997) in determining plaintiff's RFC. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

Dr. Joseph Garland, plaintiff's treating physician for 15 years, states that plaintiff suffers from multiple medical problems, including chronic cervical strain, allergic rhinitis, depression, unspecified connective tissue disease with arthritis, fibromyalgia, severed seborrheic dermatitis of the scalp, hypothyroidism, acid reflux, tachycardia with arrhythmia, and obstructive sleep apnea requiring C pap. (Tr. 1264, 1239–1240). In October 1999, Dr. Garland opined that plaintiff was limited to lifting and carrying no more than 10 pounds, to standing/walking for one hour per day (for only 15 minutes at one time), and to sitting for three hours per day (for only one-half hour at one time) due to her connective tissue disorder. (Tr. 1035–36). Dr. Elliot, the medical expert who testified at the ALJ hearing, testified that plaintiff's diagnosis of poorly differentiated connective tissue disease "would include the fibromyalgia." (Tr. 1416). Dr. Garland assessed that plaintiff should never climb, balance, stoop, crouch, kneel or crawl, and limited her ability to push and pull. (Tr. 1036). In a medical assessment provided to the Bureau of Vocational Rehabilitation in February 2001, Dr. Garland opined that plaintiff was limited to standing/walking for one to four hours per day, sitting for three hours per day, and lifting up to 10 pounds only occasionally, and was unable to use her hands for repetitive pushing or pulling or fine manipulation due to her mixed connective tissue disease. (Tr. 895–96). Dr. Garland also assessed that plaintiff was unable to perform full-time or part-time work. (Tr. 895). In May 2006, Dr. Garland opined that the combination of plaintiff's impairments precluded gainful employment. (Tr. 1264).

The ALJ rejected Dr. Garland's assessments, stating that the physical limitations imposed by Dr. Garland "are grossly disproportionate to the available objective medical evidence, and they thus lack the necessary supportability to entitle[] them to even deferential or other preferential weight." (Tr. 40). The ALJ gave "greater weight to the conclusions reached in the prior ALJ opinion" and to the opinion of Dr. Elliot, the medical expert who testified at the hearing, who "found little evidence of any reason for significantly restricting

---

**2.** The Court notes that the Commissioner's citation to "mild" connective tissue disease (Doc. 17 at 4, citing Tr. 1240) is a typographi-cal error. Dr. Garland's diagnosis is "mixed" connective tissue disease. (Tr. 1240).

claimant from a physical perspective other than with respect to the use of her left elbow." (Tr. 41). In support of the ALJ's findings, the Commissioner points to some of the minimal findings on x-ray, MRI, and clinical examination. (Doc. 17 at 10–11, citing Tr. 906–911 [Dr. Bhaiji's consultative examination of Jan. 2002], Tr. 1103 [Dr. Pedoto's examination of June 2002], and Tr. 1206 [Dr. Fishman's examination of Jan. 2005]). The Commissioner contends the ALJ reasonably rejected Dr. Garland's assessments in light of the lack of objective findings supporting such assessments. (Doc. 17 at 11).

The problem with the ALJ's decision and Commissioner's position is twofold. First, the ALJ failed to evaluate plaintiff's fibromyalgia impairment in accordance with Sixth Circuit precedent. Second, the ALJ failed to follow Social Security regulations and the law of the Sixth Circuit in evaluating and weighing Dr. Garland's opinions on plaintiff's limitations.

█ The ALJ's reliance on the lack of "objective" evidence to discount Dr. Garland's opinions is wholly inconsistent with plaintiff's diagnosis of fibromyalgia. Fibromyalgia is a condition which "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Secretary of Health and Human Services,* 854 F.2d 815, 817–820 (6th Cir.1988).[3] Unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Id.* at 820. *See also Rogers v. Commissioner,* 486 F.3d 234, 243–44 (6th Cir.2007) ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective

evidence are not particularly relevant"). Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers,* 486 F.3d at 244 (quoting *Preston,* 854 F.2d at 820). As the *Preston* Court explained:

> [F]ibrositis [the term previously used for fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.

*Preston v. Secretary of Health and Human Services,* 854 F.2d 815, 817–820 (6th Cir.1988). A diagnosis of fibromyalgia involves testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. *See Rogers,* 486 F.3d at 244. Fibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms. *See Green–Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir.2003) (fibromyalgia is a "disabling impairment" that can qualify an individual for disability payments even though "there are no objec-

---

**3.** In *Preston,* the term "fibrositis" was used instead of "fibromyalgia." Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis. *See* The Merck Manual (17th ed. 1999), p. 481.

tive tests which can conclusively confirm the disease."); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996) ("Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.").

In the instant case, it is undisputed that plaintiff suffers from fibromyalgia. (Tr. 43, ALJ Finding # 2). The two consultative examiners for the Social Security Administration, plaintiff's treating physician Dr. Garland, and plaintiff's rheumatologist all diagnosed fibromyalgia. (Tr. 544, 907, 660, 441, 1095, 1099). Dr. Garland's more than 300 pages of progress notes document plaintiff's consistent complaints of joint pain and stiffness, sleep problems and/or fatigue, depression, and tenderness on examination, all classic symptoms associated with the diagnosis of fibromyalgia. (Tr. 150–269, 294–314, 483–509, 554–633, 647–666, 940–966, 1014–1034, 1136–1227, 1264–1277). *See Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820. Dr. Garland's opinion is also supported by the progress notes from the rheumatology clinic at Miami Valley Hospital which confirm the diagnosis of fibromyalgia and document general muscle weakness, tenderness all over the body in almost all joints, fatigue, and more than 14 tender points on clinical examination. (Tr. 1095–1098, 1099).[4] Dr. Pedoto, the physical medicine and rehabilitative specialist to whom Dr. Garland referred plaintiff, reported in June 2002 that on examination plaintiff had tender points over a number of muscles, including tenderness in the cervical, thoracic, and lumbar paraspinals. He also noted tenderness over the trapezius, pectoralis major, left lateral epicondyle, bilateral greater trochanters, left pes ancillary and bursa, and left gastrocneumius. (Tr. 1103). Dr. Elliot, the medical expert who testified at the hearing, stated laboratory tests showing plaintiff has an elevated ANA (antinuclear antibodies) support the diagnosis of fibromyalgia. (Tr. 1417). Dr. Elliot testified that a lab test, such as a positive ANA, is a non-specific test but is a mark of inflammation. *Id.* Dr. Elliot stated, "When the patient's complaints are primarily those of muscle soreness and then these match those complaints, then it does indicate objectively that she does have some fibromyalgia." (Tr. 1417).

Based on the above, the ALJ's decision to disregard Dr. Garland's opinion based on the lack of "objective" evidence is without substantial support in the record. *Preston*, 854 F.2d at 820. The ALJ failed to discuss, let alone apply, the correct standard for assessing plaintiff's fibromyalgia in his decision. Rather, the ALJ (and the Commissioner in his brief) emphasized the lack of objective findings and "normal" clinical findings. (Tr. 40–41; Doc. 17 at 10–11). The lack of objective findings to support the fibromyalgia diagnosis does not undermine the limitations ultimately imposed on plaintiff by her treating physician and are wholly consistent with plaintiff's diagnosis. Where plaintiff's treating physician, specialist, and consultative examiners have diagnosed fibromyalgia, and the medical research indicates that there are a lack of objective tests to prove this condition, it was unreasonable for the ALJ to require objective findings. *Rogers*, 486 F.3d at 243–44;

---

4. The American College of Rheumatology lists the criteria for the classification of fibromyalgia as a history of widespread pain in the body present for at least three months and pain in 11 of 18 tender points on digital palpation. *See* http://www.nfra.net/Diagnost. htm.

*Preston,* 854 F.2d at 819. The objective and "normal" findings cited by the ALJ have little relevance to plaintiff's diagnosis of fibromyalgia or to Dr. Garland's assessments of plaintiff's functioning based thereon. *Rogers,* 486 F.3d at 245; *Preston,* 854 F.2d at 820. These findings do not constitute substantial evidence outweighing the treating physician's opinions.

In addition, the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating and weighing Dr. Garland's opinions on plaintiff's limitations. The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a treating physician assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96–2p, 1996 WL 374188, at *5; *Wilson,* 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*de-notes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakley,* 581 F.3d at 407 (emphasis in the original and quoting *Rogers v. Commissioner,* 486 F.3d 234, 243 (6th Cir.2007)).

In this case, the ALJ failed to evaluate Dr. Garland's assessments in accordance with Sixth Circuit precedent and the Social Security regulations and give "good reasons" for rejecting the treating physician's opinions. While the ALJ specifically declined to give controlling weight to Dr. Garland's opinions, there is no indication from the ALJ's decision that he considered the regulatory factors in determining the weight to afford Dr. Garland's opinions, including the length, frequency, nature, and extent of the treatment relationship and the consistency of Dr. Garland's conclusions. *Blakley,* 581 F.3d at 406. The ALJ failed to assign any weight to Dr. Garland's opinions although certain factors support affording Dr. Garland's opinions great weight. Dr. Garland has treated plaintiff since at least 1992 (Tr. 234) and appears to have been intimately involved in plaintiff's care. The record contains 15 years-worth of progress notes documenting Dr. Garland's clinical examinations, tests, referrals, and treatment for plaintiff's fibromyalgia, connective tissue disease, positive ANA, and numerous other impairments. (Tr. 150–269, 294–314, 483–509, 554–633, 647–666, 940–966, 1014–1034, 1136–1227, 1264–1277). This wealth of information places Dr. Garland in the best position to assess plaintiff's functional capacity from the standpoint of her overall condition.

Dr. Garland's opinion on plaintiff's limitations is also consistent with that of Dr. Pedoto. Based on his examination, Dr. Pedoto estimated that plaintiff could sit for six of eight hours a day with breaks every 30 to 60 minutes; could walk or stand one

hour a day with breaks every 15–30 minute; should avoid twisting, crawling, squatting, or ladders; and would have difficulty with repetitive hand or foot movements. Dr. Pedoto concluded that Ms. Lawson was "most appropriate for a sedentary type position with occasional lifting in the range of 10 pounds." (Tr. 1103).

While Dr. Elliot, the medical expert, testified that fibromyalgia might warrant some degree of restricted activity, he testified that fibromyalgia, as a medical condition, "does not establish any kind of total disability." (Tr. 1417). Not only is Dr. Elliot's opinion that fibromyalgia can never be a disabling impairment inconsistent with the legal authority set forth above, *see Preston*, 854 F.2d at 820, it is clearly established by law that the opinion of a non-treating medical advisor such as Dr. Elliot does not constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *Lashley v. Sec. of HHS*, 708 F.2d 1048, 1054 (6th Cir.1983); *see also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987) (the opinion of a non-examining physician "is entitled to little weight if it is contrary to the opinion of the claimant's treating physician."). In any event, on cross-examination, Dr. Elliot admitted, "Truthfully, I can't really tell you what sort of restrictions that she should have. I haven't examined her." (Tr. 1419). Dr. Elliot also testified he had no basis for disagreeing with the limitations imposed by Dr. Garland. (Tr. 1419). Dr. Elliot's opinion, in context, does not amount to substantial evidence to discount Dr. Garland's opinion and to support the ALJ's RFC finding.

The ALJ's rejection of Dr. Garland's opinion is inconsistent with the legal standards applicable for determining the weight to a treating physician's opinion in fibromyalgia cases and lacks substantial support in the record. *Blakley*, 581 F.3d

at 407. Although the ALJ was not bound by Dr. Garland's opinion, the ALJ was obligated to articulate "good reasons" based on the evidence of record for not giving weight to the treating physician's opinion. *Wilson*, 378 F.3d at 544. He failed to do so in this case. Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed. Plaintiff's first assignment of error should be sustained.

Plaintiff's second assignment of error asserts that the ALJ mis-applied the principles set forth in *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir.1997) in determining plaintiff's RFC. In *Drummond*, the Sixth Circuit held the doctrine of *res judicata* applies in social security cases and "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842.

In the instant case, the ALJ in the prior decision determined that plaintiff was limited to a range of light work with lifting no more than 15 pounds and the need to alternate sitting and standing. (Tr. 729). The ALJ in the instant case found plaintiff could lift up to 20 pounds and did not impose an alternate sit/stand requirement. (Tr. 44). Plaintiff contends the ALJ in this case was bound by the additional limitations imposed by the ALJ in the previous case in determining plaintiff's RFC because there was no showing of medical improvement during the intervening time period.

Because the Court finds the ALJ's RFC decision is without substantial support in the record given the ALJ's failure to accord proper weight to plaintiff's treating physician and to properly assess plaintiff's fibromyalgia in accordance with Sixth Circuit law, the Court need not reach plaintiffs second assignment of error.

This matter should be remanded for an award of benefits. "[A]ll essential factual issues have been resolved and the record adequately establishes ... plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir.1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir.1987). Based on the residual functional capacity assessments of Drs. Garland and Pedoto, plaintiff would be unable to perform even sedentary work for a full 8–hour workday. Both assessments by these doctors would preclude plaintiff from performing work on a "regular and continuing" basis for a 40–hour work week as required by Social Security Ruling 96–8p. Several courts have observed that "the Commissioner takes the position that at step five of the sequential disability determination, only a claimant's ability to perform full-time work will permit an ALJ to render a decision of 'not disabled.'" *Barsotti v. Commissioner, Social Sec. Admin.*, 2000 WL 328024 (D.Or. March 13, 2000). *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir.2000); *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir.1999); *Sims v. Apfel*, 172 F.3d 879 (10th Cir.1999) (unpublished), 1999 WL 55334, at *3; *Matz v. Sisters of Providence in Oregon*, No. Civ. 98–1598–JO, 1999 WL 1201682 (D.Or. Dec. 8, 1999). In other words, "[a] claimant is disabled if he cannot perform full-time work. SSR 96–8p." *Criner v. Barnhart*, 208 F.Supp.2d 937, 956 n. 21 (N.D.Ill.2002); *Gotz v. Barnhart*, 207 F.Supp.2d 886, 897 (E.D.Wis.2002). "[P]art-time work does not constitute working on a 'regular and continuing' basis." *Carr v. Apfel*, 1999 WL 1489892, *5 (N.D.Ohio 1999).

Even if plaintiff were able to perform sedentary work on a full-time basis, she would nevertheless be found disabled under the Medical–Vocational Guidelines (the "Grids"). As of the date of her SSI application of September 25, 2001 (protective filing date), plaintiff was an individual closely approaching advanced age, with a limited education, and no past work experience. Therefore, she would be found disabled on under Grid Rule 201.09 for sedentary work given her age, education, and work experience. *See* Grid Rule 201.09, Appendix 2 to Subpart P, Part 404.

Thus, the proof of disability is strong and opposing evidence is lacking in substance. Since a remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose, *Faucher*, 17 F.3d at 176, this matter should be remanded for an award of benefits.

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of SSI benefits beginning September 25, 2001.